401 So.2d 1173 (1981)
BURGER KING CORPORATION and Employers Insurance of Wausau, Appellants,
v.
Joseph STARK, Appellee.
No. WW-409.
District Court of Appeal of Florida, First District.
August 11, 1981.
*1174 Steven Kronenberg of Adams, Kelley & Kronenberg, Miami, for appellants.
Jerold Feuer, Miami, for appellee.
THOMPSON, Judge.
The appellants challenge a workers' compensation Order, contending in part that: (1) the Deputy Commissioner ("the Deputy") erroneously determined that the claimant sustained a permanent partial disability ("PPD") based on loss of wage-earning capacity; and (2) the Deputy erred by finding that the claimant was temporarily totally disabled ("TTD") from April 30 to September 7, 1979. We agree and reverse.
The claimant, an assistant manager for Burger King, sustained a compensable lower back injury in March 1979. He was examined by Dr. Steiner, an orthopedic surgeon, who released the claimant to return to light work on April 23, 1979. The claimant attempted to return to work but after working 2 days he was unable to continue. Shortly thereafter, he terminated his employment with Burger King. He stated that he then attempted to find work in Florida, but he did not recall where he looked. He did apply for a sales position with a real estate company, and he began employment there on June 1, 1979. However, while he worked for this company he received no salary and made no commissions, and on September 21, 1979 his employment was terminated because he was a "non-producer."
On September 7, 1979, the claimant was examined by Dr. Lusskin, an orthopedic surgeon, who noted that the claimant sustained a 15% to 20% anatomical PPD. The Deputy found that the claimant reached maximum medical improvement ("MMI") as of September 7, 1979. Later in September, the claimant moved to California and began delivering pet supplies. Beginning in March 1980, he began to unsuccessfully look for managerial or sedentary work in California.
Hearings began in March 1980, when the following was also received as evidence: The claimant is 26 years old and has a Florida real estate license, as well as a college degree in urban land use planning. His employment application with Burger King also shows that he has college degree in business administration, in addition to employment experience as a building contractor (1 1/2 years) and an assistant manager in a department store (6 months). He currently considers himself to be in generally good health, except for his back injury.
The Deputy found that the claimant's average weekly wage at Burger King was $310.00, and that his current earnings in California are $165.00 per week. The Deputy also found that the claimant sustained a 55% PPD based on loss of wage-earning capacity, and that he was TTD from April 30 to September 7, 1979.
Loss of wage-earning capacity is generally based on findings "as to whether by virtue of the injury the claimant suffered any reduced capacity to earn in the same or other employment the wages which [he] was receiving at the time of the injury." Ball v. Mann, 75 So.2d 758, 760 (Fla. 1954). See also Southern Bell Tel. & Tel. Co. v. Bell, 116 So.2d 617, 621 (Fla. 1959). In making this determination, § 440.25(3)(c), Fla. Stat. (Supp. 1978) lists numerous factors which should be considered, the first one being the extent of the claimant's actual physical impairment.
*1175 The Deputy found, pursuant to Dr. Lusskin's report, a 15% to 20% anatomical impairment. While the appellants dispute the validity of Dr. Lusskin's rating, we find that the Deputy could have properly relied upon that rating.
Another factor to be considered is the wages actually being earned by the claimant after his injury. The appellants contend that the Deputy placed undue emphasis on this factor, see Sterling Equip. Man. Corp. v. May, 144 So.2d 305, 308 (Fla. 1965), and ignored other important factors such as the claimant's age, education, and work experience. See, e.g., Mohawk Construction Co. v. Doty, IRC Order 2-3817 (May 22, 1979); Montgomery Ward v. Hayes, 172 So.2d 581 (Fla. 1965).
The appellants' point is well-taken, especially when viewed in light of another factor: whether the claimant has made a good faith effort to test his wage-earning capacity in the open labor market after reaching MMI. See Burger Chef v. Benedetto, 394 So.2d 206, 207 (Fla. 1st DCA 1981); Exxon Co. v. Alexis, 370 So.2d 1128, 1132 (Fla. 1978). In this case, the Deputy found that "the claimant has conducted a thorough job search and is excused from any further search. His limitations and work history adversely affect his ability to compete for a job even though he is well motivated." This finding is not supported by competent substantial evidence. The claimant simply did not timely and "realistically test his wage-earning capacity in the job market... ." Food Fair, Inc. v. Povalitis, 390 So.2d 410 (Fla. 1st DCA 1980). Nor was there any evidence justifying an excusal from the work search requirement. Cf. Benedetto, 394 So.2d at 207 (where such an excusal was justified because two treating physicians reported that the claimant was "not yet capable of returning to some form of employment.")
The claimant failed to prove that he sustained a loss of wage-earning capacity in excess of his anatomical impairment. Additionally, the Deputy erroneously found that the claimant was TTD from April 30 to September 7, 1979.
TTD is the healing period during which the claimant is totally disabled and unable to work, due to his injury. When there is no medical evidence that a claimant is unable to work, he must make a conscientious effort to return to work before he can establish that he is unable to work. Walter Glades Condominium v. Morris, 393 So.2d 664, 665 (Fla. 1st DCA 1981).
In this instance, the claimant unsuccessfully attempted a two day return to work after Dr. Steiner's release. Burger King paid the appropriate TTD benefits for this period of time, and subsequently the claimant terminated his employment.
This Court has stated that "when a claimant's job is no longer available, and there is no medical evidence that he is unable to work, the claimant is ... required to seek work in order to establish TTD." Lehigh Corp. v. Byrd, 397 So.2d 1202, 1204 (Fla. 1st DCA 1981). Here, the claimant left his job with Burger King, but according to Dr. Steiner's release, he was still capable of performing light work, and thus, under Lehigh, the claimant was required to conscientiously seek such work. In this respect, the claimant's nonspecific recall of his Florida work search is insufficient to establish a bona fide work search. See Milex Southern Medical, Inc. v. Osuna, IRC Order 2-3763 (April 12, 1979), cert. den. 383 So.2d 1200 (Fla. 1980). Moreover, the claimant did not show that "his work search was unsuccessful due to his disability (rather than unavailability of work)." Lehigh, 397 So.2d at 1204. Thus, from April 30 to May 31, 1979, the claimant was not TTD.
As for the period from June 1 to September 7, 1979, the claimant worked for a real estate company. Although he earned no money, this circumstance was not due to the effects of his injury, but to the fact that he was a "non-producer." Accordingly, he was not TTD during this time.
In conclusion, we note that the appellants also challenge the Deputy's determination of the claimant's average weekly wage, as well as the Deputy's finding that the appellants *1176 are responsible for the payment of Dr. Lusskin's bill. We affirm on these two points, while we reverse the Deputy's Order insofar as it awards TTD benefits and PPD benefits based on loss of wage-earning capacity. This cause is remanded for proceedings consistent with opinion, including the award of PPD benefits based solely on the claimant's anatomical impairment.
ROBERT P. SMITH Jr., C.J., and JOANOS, J., concur.